UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL O. RUFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 9-87-B-W |
| | ) |
| BRUCE BRANN, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDED DECISION**

Daniel Ruffin has sued correctional officers from the Maine State Prison claiming that they violated his constitutional rights when a report naming him as a witness to an inmate-on-inmate assault at the prison was released to one of the inmates who faced disciplinary charges as a result of the incident. A number of the officers and supervisors, including the officer who authored the initial report, were dismissed as the result of an early dispositive motion. Two correctional officers actually involved in releasing the report and the ensuing investigation of the incident remain as defendants. They have now moved for summary judgment. The plaintiff has failed to respond to the motion. I now recommend that the court grant their motion and enter judgment for the defendants.

**SUMMARY JUDGMENT STANDARD**

At the summary judgment stage," the United States Supreme Court explained in Scott v. Harris, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." 550 U.S. 372, 380 (2007) (citing Federal Rule of Civil Procedure 56(c)). Scott reemphasized: "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)). "'[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

Ruffin has not presented any evidence in defense of the motion for summary judgment. However, this court,

> may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002).

## STATEMENT OF FACTS

Daniel Ruffin is currently an inmate at the Downeast Correctional Facility. (SMF ¶ 1.) Ruffin was incarcerated at the Maine State Prison (MSP) at the time of the alleged report incident. (Id. ¶ 2.) Defendant Fremont Anderson is a corrections officer at MSP who was working as the Disciplinary Clerk in August of 2008. (Id. ¶ 3.) As the Disciplinary Clerk, Anderson was responsible for collecting the paperwork for the record to go to the disciplinary board. (Id.¶ 4) The documents for a disciplinary board proceeding would be forwarded to Anderson from the Unit Manager after a disciplinary investigation. (Id. ¶ 5.) The documents forwarded to Anderson would include the disciplinary investigation and any relevant reports or statements. (Id. ¶ 6.) Anderson

2

would ensure that all the necessary documents were assembled and properly dated and completed, and create a disciplinary packet for the disciplinary proceeding.  (Id. ¶ 7.)  Anderson would then schedule the matter for hearing.  (Id. ¶ 8.)  Prior to the disciplinary hearing, Anderson would forward the disciplinary packet to the assigned hearing officer, the inmate, and his counsel substitute.  (Id. ¶ 9.)  Anderson did not actually participate in the disciplinary proceedings.  (Id. ¶ 10.)

In August 2008, Anderson received documents referring an inmate for disciplinary proceedings for an alleged altercation with another inmate on August 20, 2008.  (Id. ¶ 11.)  Pursuant to the Department of Corrections policy, the Unit Manager reviewed the documents including the disciplinary report by the reporting officer and the disciplinary investigation, and referred the documents to Anderson for a disciplinary proceeding.  (Id. ¶ 12.)  The documents included a report from Sergeant Brann detailing the incident and a disciplinary investigation by Officer Baker.  (Id. ¶ 13.)  The report from Brann detailed the alleged incident and referenced conversations with Daniel Ruffin regarding the alleged incident.  (Id. ¶ 14.)  The report was not marked confidential and did not identify Ruffin as a confidential informant.  (Id. ¶ 15.)  The Unit Manager who reviewed and forwarded the documents to Anderson did not indicate that there was confidential information contained in the report or that there was a possible confidential informant.  (Id. ¶ 16.)  When Anderson reviewed the documents, he did not believe the report contained confidential information. (Id. ¶ 17.)  Anderson included the report in the disciplinary packet that was forwarded to the hearing officer, the inmate, and the inmate's counsel substitute.  (Id. ¶ 18.)  Anderson did not release the disciplinary packet or the report from Sergeant Brann to any other inmates and followed the procedure for scheduling the hearing.  (Id. ¶ 19.)  Anderson provided the disciplinary packet to the inmate and his counsel solely in the performance of his job as Disciplinary Clerk.  (Id. ¶ 20.)

As the Disciplinary Clerk, Anderson was responsible for numerous disciplinary packets including many different documents.  (Id. ¶ 21.)  On average, there are approximately 1,300 disciplinary proceedings conducted at the Maine State Prison per year. (Id. ¶ 22.)  At the time of the

alleged incident, Anderson had just started in his position of Disciplinary Clerk in June 2008. (Id. ¶ 23.) Anderson had no intention of identifying Ruffin as an informant or putting him at any risk. (Id. ¶ 24.) Anderson knew Ruffin as an inmate but had little to no contact with him and had no relationship with him. (Id. ¶ 25.)

Defendant David George is a captain at the Maine State Prison who was working as the Disciplinary Coordinator overseeing the disciplinary process in August 2008. (Id. ¶ 26.) George worked as the Disciplinary Coordinator from approximately 2003 to June 2009. (Id. ¶ 27.) On September 2, 2008, a disciplinary board hearing was held for one inmate involved in the alleged altercation with another inmate on August 20, 2008, referenced above. (Id. ¶ 28.) The hearing officer for this disciplinary proceeding was Unit Manager, Captain Douglas Starbird. (Id. ¶ 29.) George was not the hearing officer for this particular disciplinary proceeding. (Id. ¶ 30.) George would not have reviewed the disciplinary packet for these particular proceedings unless he was the assigned hearing officer or unless specifically referred to him with a question. (Id. ¶ 31.) George did not review the disciplinary packet in this proceeding or the report by Sergeant Brann. (Id. ¶ 32.) George knew Ruffin as an inmate but did not have any other relationship with him. (Id. ¶ 33.)

On September 8, 2008, George was informed that Ruffin had made a complaint regarding the existence of his name in a report of the altercation between two other inmates referenced above and the inclusion of the report in the disciplinary packet for the disciplinary proceedings of one of the inmates. (Id. ¶ 34.) George immediately had a meeting with Ruffin on September 9, 2008, to discuss the issue regarding his name on the report included in the disciplinary packet. (Id. ¶ 35.) George's primary concern at the time of the meeting was to ensure that Ruffin did not feel that he was in danger by other inmates and to take any steps to provide him sufficient protection. (Id. ¶ 36.) At the meeting, Ruffin indicated to George that he did not feel that his safety was in jeopardy. (Id. ¶ 37.) Ruffin told George that he wanted to "clear his name." (Id. ¶ 38.) Ruffin never reported any threats from other inmates to George, nor named any inmates that he feared would physically harm him.

(Id. ¶ 39.)  Ruffin never requested a transfer to another unit or any particular security or protection.  (Id. ¶ 40.)  Ruffin's real concern was that he would have to retaliate if another inmate called him a "rat."  (Id. ¶ 41.)  After reviewing the record of the disciplinary proceeding, it appeared to George that the report by Sergeant Brann should have been marked confidential.  (Id. ¶ 42.)  There was nothing in the record to indicate that the report was included purposefully to identify Ruffin as an informant.  (Id. ¶ 43.)  As a result of this incident and the subsequent meeting with Ruffin, as Disciplinary Coordinator, George put in place some safeguards to ensure that this would not happen again.  (Id. ¶ 44.)  Ruffin has not claimed that he was the victim of any violence at the hands of other inmates or threatened by other inmates.  (Id. ¶ 45.)

## RECOMMENDED RESOLUTION OF EIGHTH AMENDMENT CLAIM

Ruffin claims that Anderson and George violated his constitutional rights under the Eighth Amendment because they allowed the report authored by Sergeant Brann to be included in the disciplinary packet provided to another inmate during the disciplinary proceeding.  George, the Disciplinary Coordinator who oversaw the disciplinary process, concedes that mistakes were made in the way the report was handled.  The defendants note, however, that Ruffin was never physically harmed as a result of the release of the information and that the officer who released the report harbored no ill will toward Ruffin and no reason to believe the release of the report would endanger Ruffin.  The defendants have offered an unopposed statement of material facts, supported by record citations to their own affidavits.  Pursuant to District of Maine Local Rule 56(f), those facts are therefore deemed admitted.

It is clear from Ruffin's pleading that his claim, at best, is one framed by the Eighth Amendment cruel and unusual punishment inquiry.  See generally Farmer v. Brennan, 511 U.S. 825 (1994); Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991).  In his pleading Ruffin summarizes these defendants' responsibility as follows:  "The release of

plaintiff[']s name on a confidential document to the disciplined inmate (Hastings) obviously places plaintiff in a very dangerous and volatile situation, and further being labeled as a 'prison informant'." (Compl. Attach. 1A, Doc. No. 1-1.) He hypothesizes that these statements could have endangered his safety. The summary judgment record now conclusively establishes that Ruffin was not endangered. It also establishes that Ruffin's primary motive in lodging his grievance was his concern that he would be labeled a prison "rat" and his reputation would thereby be compromised.

The uncontested summary judgment record also reveals that neither Anderson nor George demonstrated any ill will toward Ruffin and neither of the officers acted out of animosity. Anderson was relatively new at his job and, at worst, was negligent in allowing the un-redacted report to be released. George, as the supervising officer, responded promptly to the situation, verified that Ruffin had not been threatened or harmed, and took measures to ensure that this type of situation did not occur in the future.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). The mere fact that Ruffin felt that his "good name" had been besmirched amongst his fellow inmates does not equate with cruel and unusual punishment. The Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of inmates [and] ... to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 832-33. In Farmer the Court clarified that the Eighth Amendment has an objective and a subjective component. See id. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'" id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991), ) that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of

life's necessities,'" id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, the prison official must have a "'sufficiently culpable state of mind,'" id. (quoting Wilson, 501 U.S. at 297), and in cases such as this one "that state of mind is one of 'deliberate indifference' to inmate health or safety," id.  (quoting Wilson, 501 U.S. at 302-03).

Anderson and George can only be held liable if they were deliberately indifferent to the need to protect Ruffin from a substantial risk of serious harm from other inmates.  Berry v. Sherman, 365 F.3d 631, 633 -34 (8th Cir. 2004).  With respect to the "'indifference' part" of this test,  even if  the corrections officer was aware of the risk he will not be held liable on a deliberate indifference standard if  he "responded reasonably to the risk, even if the harm ultimately was not avoided."  Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 844.)  "Conceivably, a response that was colorable and taken in good faith might still be enough to negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent)[.]"  Id.  "Deliberate indifference, in this sense, is a mental state akin to criminal recklessness."  Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) (citing Farmer, 511 U.S. at 836-37.)

George clearly did absolutely nothing in this case that could possibly be viewed as deliberate indifference.  When he learned of the problem he took the necessary steps to insure that Ruffin was not in immediate danger.  He also took remedial action to prevent the situation from reoccurring.  While Anderson may have exercised poor judgment in releasing the report with Ruffin's name, there is no evidence in this record to suggest that he did so with deliberate indifference to the potential harm it might cause.  On this record, George and Anderson are entitled to judgment as a matter of law.

7

## CONCLUSION

Based upon the foregoing I recommend that defendants' motion for summary judgment be granted.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 16, 2009.